# NATIONAL METALLURGIC COMPANY v. WHITMAN,

## WHITMAN v. HEARNE.

PATENTS; INTERFERENCE; CONSTRUCTIVE REDUCTION TO PRACTICE; FOREIGN INVENTORS; FOREIGN LAWS.

1. The theory underlying the doctrine of constructive reduction to practice is that the filing of a proper application constitutes a sufficient disclosure to enable one skilled in the art to practise the invention.

2. A foreign inventor is entitled to the filing date of an abandoned application in his own country as the date of his constructive reduction to practice, where an application subsequently filed by him here for the same invention is placed in interference. (Construing par. 2, sec. 4887, Rev. Stat., as amended by U. S. Comp. Stat. Supp. 1909, p. 1271.)

3. A finding by the Commissioner of Patents in an interference case that the Interior Department was duly advised that Germany had adhered to the international convention, to take effect May 1, 1903, is a sufficient showing that subsequent to that date Germany was affording citizens of the United States applying for patents there the privileges accorded citizens of foreign countries applying for patents here, under par. 2, sec. 4887, U. S. Rev. Stat.

4. A finding by the Patent Office in an interference case, that the filing in Germany of an application for a patent in behalf of the inventor, but not in his name, is in accordance with German law, is supported by the uncontradicted testimony of the party in whose name the application was filed, that he was a member of a syndicate having title to the invention, and was authorized to file the application; that the inventor was the syndicate's head engineer, and it was usual "to apply for all patents for inventions made by the engineers of our syndicate, in all countries, in my name, provided the law did not require the inventor himself to make the application," especially where the German application shows that the applicant was not required to state that he was the inventor.

Nos. 643 and 644.  Patent Appeals.  Submitted May 12, 1910.  Decided June 1, 1910.

HEARING on appeals from decisions of the Commissioner of Patents in interference proceedings.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. John H. Roney* for the appellant, the National Metallurgic Company, assignee of Tom Cobb King.

*Mr. Melville Church* and *Mr. A. S. Steuart* for James N. Whitman.

*Mr. Justice* ROBB delivered the opinion of the Court:

These are interference proceedings and the issue is embraced in the following counts:

"1. The process of agglomerating fine iron ores or residues, which consists in subjecting the same to a temperature which shall cause the particles thereof, due to the impurities contained therein, to fuse sufficiently to become semiplastic and sticky, and agitating by rolling the mass when in the semiplastic state.

"2. The process of desulphurizing and agglomerating fine iron ores or residues, which consists in eliminating the sulphur by

means of an oxidizing atmosphere at a temperature best suited for that purpose, and then moving the mass into a temperature which shall cause the particles thereof, due to the impurities contained therein, to fuse sufficiently to become semiplastic and sticky, and agitating the mass by revolving it about a horizontal or inclined axis.

"3. The process of agglomerating fine iron ores or residues, which consists in passing the same through a rotating kiln having a region in which the degree of temperature shall cause the particles thereof, due to the impurities contained therein, to fuse sufficiently to become semiplastic and sticky.

"4. The process of desulphurizing and agglomerating fine iron ores or residues, which consists in passing the same through a rotating kiln, in one part of which it shall be exposed to an oxidizing atmosphere at a temperature best suited for its desulphurization, and in another part of which it shall be exposed to a temperature which shall cause the particles thereof, due to the impurities contained therein, to fuse sufficiently to become semiplastic and sticky."

Each of the three tribunals of the Patent Office has awarded priority of invention to Hugo Dicke, the senior party, and this award must stand unless these tribunals erred in treating an application covering Dicke's invention, filed in Germany on May 25th, 1903, Dicke being a subject of the German Empire, as a constructive reduction to practice. Three points are made against Dicke's right to have said application thus considered:

First, it is contended that inasmuch as Dicke's German application subsequently became abandoned, it cannot avail Dicke as a constructive reduction to practice. Par. 2 of sec. 4887 of the Revised Statutes, as amended (U. S. Comp. Stat. Supp. 1909, p. 1271) provides, *inter alia,* that an application for a patent by a person "who has previously regularly filed an application for a patent for the same invention, discovery, or design in a foreign country which, by treaty, convention, or law, affords similar privileges to citizens of the United States, shall have the same force and effect as the same application would have if filed in this country" on that date, etc. Each of

the three tribunals of the Patent Office has held, and in that finding we concur, that the German application was for the same invention as that described in Dicke's present application. On this point the Examiner of Interferences said: "The United States application as filed was almost a literal translation of the German application, and its claims as first presented were for the same specific invention and of approximately the scope as those presented in Germany." The Board of Examiners in Chief said: "After a careful consideration of Dicke's German application, we have reached the conclusion that it fully and clearly reveals the invention of the issue." The Commissioner found that "a comparison of Dicke's United States application and his foreign application, a certified copy of which is presented in evidence, shows that the subjects-matter are substantially identical."

The theory underlying the doctrine of constructive reduction to practice is that the filing of a proper application constitutes a sufficient disclosure to enable one skilled in the art to practise the invention. The benefit conferred by the above provisions of said sec. 4887 is not made to depend upon the outcome of the foreign application. The only condition with which we are at present concerned is whether the foreign application is for the same invention. If it is for the same invention, the statute requires that it "shall have the same force and effect as the same application would have if filed in this country." We perceive no reason why Dicke's German application, being substantially identical with the present application, should not be held under the statute to constitute a constructive reduction to practice, since, had it been filed here, it would have entitled him to a patent.

Second, that no evidence was introduced in behalf of Dicke that Germany "afforded similar privileges to citizens of the United States," and hence, that he has not been brought within the provisions of said sec. 4887. We think the tribunals of the Patent Office have effectively met this contention by the finding that the Interior Department was duly advised that Germany had adhered to the international convention, to take effect on

May 1st, 1903, which was prior to the filing of Dicke's German application. In the absence of any showing to the contrary, the Patent Office was thereafter justified in assuming that Germany was, in good faith, adhering to said convention.

Third, the point is made that Dicke has failed to show that under the German law it was permissible to have an application for his invention filed in the name of another party. On this point each of the three tribunals of the Patent Office found that the evidence clearly shows that Dicke disclosed his invention to Goldschmid, who filed the German application in Dicke's behalf, and that this procedure is in accordance with the German practice. Goldschmid testifies that he is a member of the syndicate having title to Dicke's invention, and was authorized to file the application; that Dicke was their head engineer, and that it was usual "to apply for all patents for inventions made by the engineers of our syndicate, in all countries, in my name, *provided the law did not require the inventor himself to make the applications.*" The German patent attorney who prepared and filed the German application testified in effect that the invention was disclosed to him by Dicke, and the application was filed in the name of Goldschmid. A translation of the German application is in the record, from which it appears that Goldschmid was not required to state that he was the inventor of the subject-matter of the application. The above testimony of Goldschmid and the German patent attorney was not objected to and was not disproved in any way. We think, therefore, that that testimony, taken in connection with the application itself, is sufficient, in the absence of any evidence to the contrary, to justify the presumption that, under the German law, it is permissible to file an application in the name of an assignee.

The decision of the Commissioner, awarding priority to Dicke, is affirmed. This opinion will be certified as the law requires.                                        *Affirmed.*

Mr. Justice BARNARD, of the supreme court of the District of Columbia, sat with the court in the hearing and determination of this appeal, in the absence of Mr. Chief Justice SHEPARD.